UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

DONALD ROGERS,

    Plaintiff,

v.

TRANSIT MANAGEMENT OF CHARLOTTE, INC.,

    Defendant.

Civil Action No. 3:20-cv-687

**JURY TRIAL DEMANDED**

## CIVIL ACTION COMPLAINT

Plaintiff, Donald Rogers ("Mr. Rogers" or "Plaintiff"), hereby complains and alleges against Defendant Transit Management of Charlotte, Inc. ("Defendant") the following:

## INTRODUCTION

1. Mr. Rogers brings this action against Defendant for discrimination, retaliation, and interference, in violation of the Americans with Disabilities Act of 1990, as amended (42 U.S.C. §§ 12101 *et seq.* - "ADA"), the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 - "ERISA"), and North Carolina common law.

2. Defendant prevented Mr. Rogers from returning to work and pretextually terminated him based on, *inter alia*, his disabilities (actual or perceived), record of disabilities, requests for accommodations, and/or in interference with his rights under an employee pension benefit plan.

## THE PARTIES

1

3. Plaintiff Donald Rogers is a U.S. citizen and subject to the jurisdiction of this Court.

4. Defendant Transit Management of Charlotte, Inc. is, and at all relevant times was, a corporate entity incorporated in, and doing business in, North Carolina. Defendant acted by and through its managers, owners, and other agents.

## JURISDICTION AND VENUE

5. This action arises under federal statutes including the ADA and ERISA. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims brought herein constitute a federal question under the laws of the United States.

6. This Court has supplemental jurisdiction over Mr. Rogers' state law claims pursuant to 28 U.S. Code § 1367 because they arise out of the same circumstances as his federal claims and are based upon a common nucleus of operative fact.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant conducts business in this district and is subject to personal jurisdiction in this district for the purposes of this action.

## ADMINISTRATIVE EXHAUSTION

8. At all times relevant to this action, Mr. Rogers was an "employee" covered by the protections of the ADA.

9. Defendant is an "employer" within the meaning of the ADA.

10. Defendant employed at least 15 employees at all relevant times.

11. Mr. Rogers satisfied his obligation to exhaust his administrative remedies by timely filing Charge(s) of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and

retaliation. On September 10, 2020, the EEOC issued a Notice of Suit Rights and Mr. Rogers timely brings this action within ninety (90) days of his receipt thereof.

12. Mr. Rogers has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

**FACTS**

13. In April of 1999, Mr. Rogers was hired and began working for Defendant as a Bus Operator (i.e. bus driver).

14. In 2009, Mr. Rogers was injured while working for Defendant due to an equipment malfunction.

15. The accident damaged Mr. Rogers' hips, knees, back, and left shoulder. These injuries have required Mr. Rogers to undergo multiple surgeries and resulted in permanent physical limitations (as compared to before the accident).

16. Despite his injuries, after the accident Mr. Rogers was able to return to work for Defendant as a Bus Operator.

17. After the accident, at times Mr. Rogers has requested reasonable accommodations for his health conditions, including time off for surgery and recovery during periods he has been unable to work.

18. On or about May 24, 2017, Mr. Rogers underwent a double knee replacement in connection with his health conditions.

19. After May 24, 2017, Mr. Rogers was unable to work for Defendant for a period due to his health conditions.

20. On February 18, 2019, Mr. Rogers' physician medically released him to return to work with restrictions (light duty 3 hours a day and no lifting more than 40 lbs.).

21. Mr. Rogers needed to have a commercial driver license from the Department of Transportation (DOT) to operate a bus, which required passing a DOT medical exam.

22. On February 18, 2019, Mr. Rogers underwent a DOT medical exam by Defendant's designated medical provider (Concentra) and passed. Upon information and belief, Defendant was notified by Concentra as a matter of course.

23. Despite being released to return to work for light duty and passing a DOT medical exam, Defendant did not allow Mr. Rogers to return to work in any capacity.

24. On March 6, 2019, Mr. Rogers' physician released him to return to work with **<u>no restrictions</u>**.

25. On March 11, 2019, Mr. Rogers underwent a fitness for duty evaluation by Concentra (Defendant's medical provider) with Dr. Elsey. The conclusion of the evaluation was that Mr. Rogers may return to work "<u>without</u> limitations/restrictions." Upon information and belief, Defendant again was provided a copy of the results of the exam as a matter of course.

26. On or about March 11, 2019, after leaving Concentra, Mr. Rogers called Sylvester Fleming, Jr. (Defendant's Human Resources) to request and discuss his return to work. Fleming told Mr. Rogers to get his DOT commercial driver license reinstated with the Department of Motor Vehicles (DMV), which Mr. Rogers then did.

27. On or about March 11, 2019, after leaving the DMV, Mr. Rogers again called Mr. Fleming to discuss his return to work and let Defendant know he was ready to complete retraining (required after an extended absence). Fleming told Mr. Rogers to "hold off" on coming back to work.

28. Defendant's only explanation as to why Mr. Rogers could not return to work was an alleged communication from Dr. Elsey about Mr. Rogers' right hip.

29. Dr. Elsey's March 11, 2019, evaluation form (from which Defendant appeared to be referring) noted that Mr. Rogers "was going to get a [right total hip replacement], but that is not in the works now." The same evaluation form by Dr. Elsey concluded that Mr. Rogers was medically fit for duty and may work "<u>without</u> limitations/restrictions."

30. As of March 11, 2019, there was no medical reason Mr. Rogers could not return to work: he had been evaluated and approved to return to work without restrictions by [1] his personal physician, [2] Defendant's physician (Dr. Elsey of Concentra), and [3] the DOT medical exam.

31. After March 11, 2019, for the next several months, Mr. Rogers continued requesting to return to work. Most of his inquiries with Defendant were ignored.

32. On or about May 22, 2019, Mr. Rogers was able to speak with Fleming, who tried to assure Mr. Rogers "not to worry" because his case was an unusual situation. Fleming said the approval needed for Mr. Rogers' return to work was simply still pending.

33. On or about May 26, 2019, pursuant to a collective bargaining agreement with Defendant, Mr. Rogers initiated a grievance for Defendant's ongoing failure to return him to work.

34. In or about early June of 2019, Mr. Rogers received a letter from Defendant dated May 28, 2019 (signed by Fleming), stating Mr. Rogers was terminated.

35. Defendant's purported reason for terminating Mr. Rogers was his "failure to return to duty after [] inactive status." Pursuant to the collective bargaining agreement in place with Defendant, employees "out with workers compensation injuries shall maintain employment and seniority for twenty four (24) months." Mr. Rogers had not worked "since May 24, 2017 due to [his] on-the-job injury."

36. While true that Mr. Rogers had not worked since May 24, 2017 (due to surgery for his on-the-job injury), the justification was entirely pretextual considering:

   a. Mr. Rogers had been fully medically cleared to return to work for <u>over two months</u> and attempting to return; and

   b. Fleming knew full well that Mr. Rogers had been medically cleared and trying to return to work because <u>they had spoken as recently as May 22, 2019 - less than one week before Fleming signed the termination letter</u>.

37. Defendant's subsequent position statement to the EEOC in this matter (responding to Mr. Rogers' Charge of Discrimination) claims that Defendant "could not allow Mr. Rogers to return to work until he passed a DOT physical as required by law." Defendant also claims that "Mr. Rogers did not undergo that physical until March 11, 2019 at Concentra" and Concentra was "not comfortable releasing Mr. Rogers to return to work."

38. However, Defendant's position is wholly without merit because Mr. Rogers *did* verifiably pass a DOT physical as early as February 18, 2019 at Concentra. Furthermore, during the March 11, 2019 Concentra appointment, Mr. Rogers was cleared to work "without limitations," with the evaluation by Dr. Elsey specifically noting: "DOT [physical] **completed and cleared in February**." (emphasis added).

39. Defendant simply has no medical or regulatory justification for its refusal to allow Mr. Rogers to return to work, instead forcing him to remain out of work so that Defendant could pretextually terminate him under the collective bargaining agreement, 24 months after his double knee replacement.

40. In the position statement to the EEOC, Defendant also admits that a union grievance for Mr. Rogers' termination was received within the time required for the decision to

6

be reviewed (pursuant to collective bargaining agreement), however Defendant never allowed Mr. Rogers the hearings and appeal process required.

41. Mr. Rogers therefore believes and avers that Defendant prevented him from returning to work and pretextually terminated him because of his disabilities (actual or perceived), his record of disabilities and/or his requests for accommodations.

**FIRST CLAIM FOR RELIEF**
**Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA")**
**([1] Disability Discrimination; [2] Failure to Accommodate; and [3] Retaliation)**

42. The foregoing paragraphs are incorporated herein as if set forth in full.

43. The ADA protects individuals who: (i) have a physical or mental impairment that substantially limits one or more major life activities; (ii) have a record of such an impairment; or (iii) are regarded as having such an impairment.

44. Mr. Rogers suffers from musculoskeletal issues (because of his on-the-job accident in 2009), which sometimes affect his ability to walk, drive, and work.

45. Mr. Rogers was able to perform the essential functions of his job with Defendant.

46. Mr. Rogers is a qualified individual with a disability, as defined by the ADA.

47. At times, Mr. Rogers required reasonable accommodations due to his health conditions, such as limited time off work.

48. Mr. Rogers requested and required time off in connection with his health conditions for periods following his accident in 2009.

49. After double knee replacement surgery on or about May 24, 2017, Mr. Rogers required time off work to recover.

50. On February 18, 2019, Mr. Rogers' physician medically released him to return to work with restrictions (light duty 3 hours a day, no lifting more than 40 lbs.).

51. On March 6, 2019, Mr. Rogers' physician released him to return to work with no restrictions.

52. On March 11, 2019, Defendant's medical provider (Concentra) evaluated Mr. Rogers and concluded that he was medically able to return to work "<u>without</u> limitations/restrictions."

53. Defendant was aware of Mr. Rogers' various medical releases to return to work but refused to allow him to return, despite his repeated requests.

54. Defendant pretextually terminated Mr. Rogers pursuant to the collective bargaining agreement, after the expiration of twenty-four (24) months following his surgery.

55. Defendant refused to review the decision to terminate Mr. Rogers following his union grievance.

56. Defendant failed to accommodate Mr. Rogers in the form of limited time off to treat his medical conditions.

57. Defendant failed to engage in the interactive process regarding Mr. Rogers' disability-related reasonable accommodation requests, instead manipulating the situation to pretextually terminate him.

58. Defendant retaliated against Mr. Rogers for requesting reasonable accommodations, an activity protected under the ADA.

59. Defendant also retaliated against Mr. Rogers for his opposition to Defendant's unlawful conduct (forcing him to stay out of work without cause).

60. Defendant discriminated against Mr. Rogers and pretextually terminated him for his actual disabilities, perceived disabilities, and/or record of disabilities.

61. Defendant's actions were in violation of the ADA.

## SECOND CLAIM FOR RELIEF
### North Carolina Common Law
### (Wrongful Discharge in Violation of Public Policy)

62. The foregoing paragraphs are incorporated herein as if set forth in full.

63. The declared public policy of North Carolina prohibits discrimination in employment based on handicap. North Carolina Equal Employment Practices Act, N.C. Gen. Stat. Ann. § 143-422.1 *et. al.* ("NCEEPA").

64. Defendant discriminated against Mr. Rogers and terminated him for his actual disabilities, perceived disabilities, and/or record of disabilities.

65. Defendant's conduct constituted wrongful discharge in violation of North Carolina law and public policy. *See Egler v. Am. Airlines, Inc.*, No. 5:17-CV-73-FL, at *7 (E.D.N.C. Feb. 21, 2018) ("courts…have interpreted NCEEPA to provide a basis for a common law wrongful discharge claim based upon discrimination due to disability").

## THIRD CLAIM FOR RELIEF
### Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 ("ERISA")
### (Interference / Discrimination / Retaliation)

66. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67. Defendant, pursuant to a collective bargaining agreement, maintained an employee pension benefit plan (retirement plan), which applied to Mr. Rogers.

68. Defendant was the administrator of the retirement plan, responsible for providing information about the plan to members and keeping complete records to determine benefits for all plan members.

69. Under ERISA, it is unlawful "to discharge, fine, suspend, expel, discipline, or discriminate against" an individual (1) to interfere with the attainment of any right provided by a

retirement plan; (2) to retaliate against an employee who exercised a right provided by a retirement plan; or (3) because an employee provided information about a retirement plan in an inquiry. 29 U.S.C. § 1140.

70. In or about late May of 2019, Mr. Rogers inquired with Defendant regarding the possibility of disability retirement, which Mr. Rogers had noticed in his review of policy documents.

71. Under the plan, disability retirement provided the receipt of benefits before normal retirement age.

72. Within days after Mr. Rogers' inquiry, Defendant terminated him.

73. After terminating Mr. Rogers, Defendant told him he was not eligible for disability retirement (allegedly because Mr. Rogers had not worked the requisite number of hours).

74. In addition to Defendant's disability discrimination (described *supra*), Defendant terminated Mr. Rogers to interfere with the attainment of his retirement plan rights, to retaliate against him for exercising (or attempting to exercise) a right provided by the plan, and/or because he provided information about the plan in an inquiry.

75. Defendant's actions were in violation of ERISA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Donald Rogers respectfully requests this Court enter judgment in his favor and grant him the following relief:

(1.) Order Defendant to compensate Mr. Rogers, reimburse him, and make him whole for any and all pay and benefits he would have received had it not been for

Defendant's illegal actions, including but not limited to back pay, front pay, salary/pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

(2.) Award Mr. Rogers any and all other compensatory damages to make him whole for Defendant's illegal actions, including for emotional distress / pain and suffering;

(3.) Order Defendant to pay punitive damages to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or other employers from engaging in such misconduct in the future;

(4.) Award Mr. Rogers all reasonable costs and attorneys' fees incurred in connection with this action;

(5.) Award Mr. Rogers injunctive relief to prohibit Defendant's further unlawful conduct in the future;

(6.) Award Mr. Rogers pre-judgment and post-judgment interest;

(7.) Order that the costs of this action be taxed against Defendant;

(8.) Award Mr. Rogers such other and further equitable and legal relief as available and appropriate under the circumstances; and

(9.) Grant Mr. Rogers a trial of this matter by a jury.

Respectfully submitted,

*/s/ Michael C. Harman*
Michael C. Harman
**Harman Law**
8712 Lindholm Dr., Ste 300,
Huntersville, North Carolina 28078
Telephone: 704.885.5550
E-Mail: michael@harmanlawnc.com
*Attorney for Plaintiff*